Good morning, our first case this morning is IN RE BIMEDA RESEARCH, Mr. Graybill. May it please the court, my name is Troy Graybill and I represent BIMEDA RESEARCH & DEVELOPMENT. This court's test for written description is highly fact-dependent, and the unique facts of this case dictate reversing the written description rejection for two reasons. First, this case involves a relatively rare recitation of a negative limitation, which is a carve-out within the context of a broader disclosure and was appreciated by the board. Second, this case involves the negative recitation of an undisputably well-known and predictably used anti-infective, Acroflavin. Can I ask it hypothetically? If the spec clearly, there's no dispute, the spec says you can't use chocolate when you're doing this, and you have a claim that says you can't use M&M's. In other words, you can use all other versions of chocolate other than M&M's. Would you say that's supported by the written description? Sorry, can you just repeat the claim? The claim is, don't use M&M's. In other words, you use all other kinds of chocolate, are usable, but other than M&M's. It's not supported by the spec, right? Because the spec excludes all chocolate. The spec excludes all chocolate. So, do you not read the spec here as being antibiotic-free or anti-infective-free? That's what the spec says, right? It doesn't just narrow the exclusion to one type of antibiotic. It excludes all of them, right? And the specification includes some disclosures that are antibiotic-free, and we admit the title says anti-infective-free. That's certainly true. However, they're in the original disclosure, for instance, Original Claim 1. Original Claim 1 does not in any way exclude the use or the possibility of anti-infectives or antibiotics. The sections in the specification, Column 1, times 47 through 51, does not exclude and does not necessarily include anti-infectives or antibiotics. So, we submit that there's a broader disclosure, which was recognized when Claim 1 was allowed in the original application, that could permit there to be other anti-infectives other than after foods and other antibiotics. We believe there is a broader disclosure there. You've got three embodiments, right? Is that the point you're making? And one of those embodiments is broader than the other two? Yeah, well, the point we're making is that there is disclosure in the specification of embodiments that may include anti-infectives, may not include anti-infectives. Well, I don't understand. The statement of the invention at Column 1 says without the use of antibiotics. In the next paragraph, line 33, it says, according to the invention, there is provided an anti-infective-free formulation. The next paragraph says this non-antibiotic approach. So, you think that includes just taking one out, which isn't referred to in the spec, right? I'm not disputing with you that the preferred embodiment of this invention is anti-infective-free. Well, I wasn't reading you under the preferred embodiment. I was reading you under the spec describing the invention and the summary of the invention. It's statements of invention that they didn't call them in the preferred embodiment or in the embodiment, right? That's correct. They didn't necessarily in the title, it doesn't disclaim it and say that it's just the preferred embodiment or in the sections that you stated. But what our point is, is that in this specification, there's extensive disclosure of the formulations being antibiotic-free. And that in the ARC, it was well-known for over 75 years that acroflavin was a well-known and highly effective... But how can it be antibiotic-free if in your claim, you exclude just, I'm sorry, what's the acro... Acroflavin. But allow for other antibiotics. So if I'm out there, you know, an accused infringer, and I'm doing... It's acroflavin-free, but I'm using other antibiotics, you'd nab me, right? You'd be able to nab me. Whereas the broader disclosure supports that it has to be entirely antibiotic-free. Am I right? Am I missing something here? No, I mean, you're missing some of the nuances that I'm sure you caught in our brief. I mean, our whole point is that there is disclosure, broad disclosure of embodiments that are anti-infective-free or that could have anti-infectives. It's very broad disclosure. They could have anti-infectives but not be anti-infective-free. Where is that in the spec? There's no specific recitation of an embodiment that necessarily has other anti-infectives. However, you will read, for instance, in the examples, there's the example one. Example one, for instance, doesn't say whether or not there would be anti-infectives in there. It just says it's simply anti-infective-free. And we believe that this court's case law permits you to carve out a limitation in particular, a negative limitation, if it is a broad genus, anti-infective-free. But your claim, isn't the claim at issue here, claim 32? Yes, that's correct. It's not anti-infective-free. That's correct. Claim 32 will read on a formulation that includes an antibiotic. It would. And that's what you surrendered in the re-exam. Well, in order to get by the anticipation reference that included antibiotic in the formulation, you amended your claim. We amended our claim because of the present scope. I didn't see any support in the written description for a claim that embraces an antibiotic, which you just agreed that claim 32 does. Well, what we believe this case, that the case law permits us to do, is to carve out from the genus of anti-infectives, to carve out a narrower species. A narrower species, if it's supported by the disclosure as viewed by a person of ordinary skill in the art, in light of the knowledge in the art. And we believe that the record supports below, and it's undisputed, that it's well known that Acroflavin was an antibiotic that was used for the prevention and treatment of bovine myositis since at least 1938. But you are seeking a claim that covers other antibiotics, other than carving out Acroflavin. Is that correct? The claim by only excluding Acroflavin could cover other antibiotics. Acroflavin is not an antibiotic, right? An antiseptic? Sorry, it's an antiseptic. I'm sorry. Correct. And so, it does cover other antibiotics. It could cover other, and it's plain meaning... How did you get around the prior art reference that Judge Clevenger made some notice of? Well, right now, in front of the PTO, we have got claims, claims 18 and 26, that have been allowed. One of them is anti-infective 3. This claim 26 says something to the effect of no bacterial action. Under claim 32, the only pending rejection at the PTO is the 112 first paragraph written description rejection. There's no prior art rejection pending on our existing Acroflavin-free... That will be in the next reading. What's that? Rejection on that will be in the next reading. Perhaps, perhaps. I think that's, maybe that's an issue for another day. I mean, what we're here before is to decide whether there is written description for our client carving out from the anti-infective 3 claim, a claim to Acroflavin-free. Does the PTO have some special rules about what you have to do when you have a negative limitation? I don't believe there's any... More specific requirement to satisfy a written description? I believe that the, really the controlling case is recent September 2012 case, the Santora's case. Which held, first of all, it reiterated that negative limitations are permitted. And second, it set forth... I wasn't suggesting that they're not permitted. Yeah. Somewhere in the back of my head was, in the annals of what goes on with the rules that the examiners play by, that there's a heightened disclosure requirement. I don't believe there's a heightened disclosure rule. And I really think the Santora's case, which says that there just needs to be shown a reason to exclude that specific limitation. And here the specific limitation is Acroflavin. And we believe that... What's the specific reason for picking that one? I mean, is there some... Is Acroflavin particularly bad to have in the formulation? No, we're not saying it's bad at all. It's highly... All the antiseptics in the whole world that you want to exclude. Because the antiseptics are thrown out along with the anti-infectives, I believe. Well, we're in a situation like Wertheim or Johnson where the prior art showed Acroflavin. And we worked with the examiner and we carved out claims that excluded Acroflavin because, as you know, an appellant has got... Or a patentee has got a right to carve out from a broader genus the subject matter which he later finds to be patentable. And here, instead of anti-infective-free, we carved out to be Acroflavin-free because of the prior art that's cited throughout the prosecution history. Around A2402 and there's other sites in the... Throughout the brief. A2555. You'll see that prior art with Acroflavin was applied. So our client narrowed the claims into exclude the well-known... To exclude Acroflavin as we believe it is entitled to do under Wertheim and under this court's case law. And particularly we believe you're allowed to do that in a case of mature art like this where this was not unpredictable. This wasn't a nascent technology. For 75 years, people have known... I see I'm in my rebuttal time. If I could just... Please, go ahead. 75 years, people have known that Acroflavin is a well-known anti-infective for this exact reason. We believe that we're entitled to do that and that a person of ordinary skill with all of this knowledge in the arts and these well-known publications would have known that Acroflavin was one of the limited number of anti-infectives that are used for this exact purpose. But the written description of harm is satisfied by what's found in this path, not what's found in the mind of one of ordinary skill in the art, right? Well, we... I take a little bit of issue with that in that in Ariad and in Boston Scientific cases, they really said that you need to look from the point of view of a person of ordinary skill in the art with the knowledge that you would have reading within the four corners of the brain. And we believe that the board underappreciated the knowledge of skill in the art and we ask that this court reverse the court's decision. Thank you, Mr. Grayball. Ms. Schoenfeld. May it please the court. Good morning. Judge Kleppner, to answer your question about the USPTO negative limitation, there is not a specific rule. However, it's the same as any other limitation. It needs to be clearly disclosed. And the MPEP does state that if alternative elements are positively recited in the specification, they may be explicitly excluded in the claims. And that's 21-7305I, negative limitations in the MPEP. What about the Santora's case that your friend cited? The Santora's case, I believe, halts our cause because in that case, the excluded element was specifically recited in the specification and there was a reason given for specifically reciting that limitation. So I don't see any problem with the Santora's case. In this case here, the examiner and the board drew a very reasonable line. The claims that were drawn to the anti-infective-free field formulation were allowed since the specification clearly demonstrated that that was the invention. And in fact, the specifications specifically cited as prior are that it was known to use an antibiotic with a field formation, indicating that the invention here was really the surprising result of taking out the anti-infective. So it was clear that the invention that was described to the public was the anti-infective-free field formation. Well, but as was pointed out, example one, I mean, some of the examples don't give you any information with regard to antibiotic-free or not. That's true. I mean, in fact, there's only one example of a formulation given and it doesn't say. But I do not think that a SCMPI specification can be equated with breath of disclosure. I think that the law requires there be actual disclosure that that was the invention. That's an interesting phrase that you should use in a case. A SCMPI specification should not, what did you say? Be equated with breath of disclosure. Okay. Now, tell me what that means. I think they are trying to take advantage of the fact that their specification is short to say that it included things that they did not specifically have session of. But now the PTO examiner admitted that acroflavine was an anti-infective in Claim 18. Otherwise, it wouldn't have been allowed to overcome obviousness and anticipation. Doesn't that admission extend to this part of the Claim 32 as well? I think even if acroflavine was known, the specification did not indicate that there was possession of a formulation which excluded acroflavine but included other antibiotics. That's the problem, right? I mean, that's the problem. You see the one that Judge Clevenger referred to, that this claim would read on formulations that have antibiotics, whereas the specification supports only antibiotic-free. Yes, I think this claim, as admitted by Aida, is not narrow, or it's a broader claim. How do you indicate possession of something you're excluding? They are excluding anti-infectives, and acroflavine is one of those. Very clearly, they excluded the anti-infectives throughout. That's even in the title. Right. Acroflavine is one of those. How do you indicate more persuasively that you have possession of something you're excluding? I think the problem here is not that they don't have support for the exclusion of acroflavine. I think they don't have support for the inclusion of other antibiotics. This hybrid seal formation that they're now claiming in Claim 32, I don't see support for. I think, contrary to the argument made by Bonita, the specification is not wide-ranging for that reason. Well, they could have put in their written description that there are some special reasons why acroflavine should be excluded. Right. That would be like the theory. They could say, under the general proposition, we're excluding all these anti-infectives and antiseptics, but there's one that is particularly problematic, and we want to make certain we exclude it. So we write a claim that says we exclude that one. In the possession, yes, I think the Chief Judge's question is an interesting one, because it's hard to possess something. But the possession concept is to show whether or not the written description shows that this is what the inventor intended to invent and understood what it was. This case really comes down to your interpretation of what is included, not what's excluded, right? You're reading this claim for what it includes, not what it excludes. There's probably plenty of support for what it excludes. Your concern is over what it perhaps includes. Yeah. Isn't that a prior art issue? I think it is a prior art issue. Why don't you bring a prior art claim then? It seems to me there's adequate support for saying, as your examiners admitted, that acroflavine is an anti-infective. You've excluded the anti-infectives. That includes acroflavine. That's not a possession problem, whatever that means, by the way, when you're excluding something. This is a prior art problem. Why didn't you attack it that way? Particularly when it seems vulnerable to that attack, as my colleague pointed out. I do agree it is vulnerable to that attack. Why do you choose the least reliable doctrine we have? We don't know what possession means either, and I know you don't. So how are we supposed to say what it means when you're talking about exclusion in the first place, and when the real issue is what is included, that's what you're worried about, is what's included. Help me out here. Examiners are certainly taught to look at written descriptions first to make sure that the claim is supported, and then to make a prior art rejection. So I think reading the claim... By the way, my law clerk just sent me a note, and I think he's right. 101 is more unreliable than that. I'd like to correct myself quickly. Please proceed. And I think reading the claim, it is not supported in the specification because of what is included. A prior art rejection would have been appropriate as well. But what we're talking about here is a claim construction that concerns you because it includes things, and yet we're focusing on possession of exclusion. That strikes me as somewhat surreal. I think we're focusing... I mean, negative claims should be treated the same as positive claims. I don't think we're focusing on exclusion. I think we're focused on the language of the claim and the disclosure of the specification. Thank you. Are there any further questions? Thank you very much, Ms. Schoenfeld. Mr. Grable? This all comes down to the fact that you haven't contested their claim construction, is it? Doesn't it? You really agree. You mean to cover a lot of things, but you're going to cover them by including an exclusion limitation, which is kind of pregnant with all it then includes. Well, I mean, we admit that the plain meaning of the claim term could be read to include other anti-infectives. And that issue really wasn't on appeal down below. And as you pointed out, what we claimed was the exclusion of a specific limitation. We have examples that exclude that specific limitation. The Patent Office has admitted that there's support for the exclusion of that limitation. And the Patent Office now wants to talk about what's included in the claim. The Patent Office said there was support for excluding acroflamine? Well, I believe if I heard correctly, Ms. Schoenfeld, and I hope I don't misrepresent, is that she did state that there was support for the exclusion of acroflamine. Maybe she meant exclusion of anti-infectives. I got to make sure I said that. It didn't seem to me that she was giving away the case. No, I'm not saying she was giving away the case. The examiner clearly had to admit that acroflamine was an anti-infective or he couldn't have granted a claim on 18. I mean, the record gives that part of the case away, I think. Please proceed. But you still have to give us some comfort about all that is included once we narrow this exclusion to only acroflamine. Well, I mean, I believe if the claims were asserted, they obviously would be construed by the courts in a manner where if there was any type of disclaimer, they would be construed at that point in time. But the issue really before us is whether or not a person of ordinary skill in the art, with all the knowledge in the art, when they read the claim that says acroflamine-free, whether they believe the specification, would support that. And we believe that a person of ordinary skill in the art would find that to be supported by the specification in light of the knowledge of the art. It's a mature art, it's not nascent technology, and what we have before us is a written description rejection. There's no prior art rejection in front of us here, so all I can really address is the written description requirement and rejection that is before us by the Patent and Trademark Office. Thank you, Mr. Gregel. Thank you.